# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-40561

United States Court of Appeals
Fifth Circuit

**FILED**

September 4, 2019

Lyle W. Cayce
Clerk

CARLOS MANDUJANO,

> Plaintiff - Appellant

v.

CITY OF PHARR, TEXAS,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:18-CV-3

Before KING, ELROD, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

The opinion in this matter filed on July 10, 2019 is hereby withdrawn and the following opinion is substituted. Carlos Mandujano, a former employee of the City of Pharr Fire Department, sued the city for sex discrimination. The district court dismissed his complaint with prejudice under Federal Rule of Civil Procedure 12(c), denied him leave to amend, and denied his motion to alter or amend the judgment. Mandujano appeals. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-40561

## I.

Carlos Mandujano was formerly employed as a deputy fire chief by appellee City of Pharr (the "City"). In early 2014, the City opened an investigation into Mandujano for sexual harassment, apparently based on letters of complaint submitted by City Fire Marshal Jacob Salinas, Deputy Fire Chief Carlos Arispe, and Assistant Fire Marshal Dagoberto Soto. The letters reportedly accused Mandujano of sexually harassing a former City employee, Blanca Cortez. Denying that he harassed anyone, Mandujano alleges that Ms. Cortez had told him that he looked like a "pollito" (Spanish for "chick") and, on two other occasions, had referred to him as a "hot young boss." According to Mandujano, he responded to Ms. Cortez's comments by telling her that he did not like the "pollito" comment and advising her to "be professional." In March or April 2015, "the investigation cleared [Mandujano]."

In August 2015, the City opened another investigation into Mandujano concerning "the same subject matter as the prior investigation." Later that month, Mandujano made a complaint to the City Manager "about harassment by two deputy chiefs who were creating a negative and hostile work environment through further statements and commentary by the two individuals in connection with the [February 2014] sexual harassment complaints and continued through the date of [Mandujano's complaint to the City Manager]." Mandujano alleges that in September 2015, the Fire Chief told him "that a sexual harassment finding would be made against [Mandujano] even though there was no evidence to support such a finding." However, on September 30, 2015,[1] the City Manager told Mandujano that "the [second] investigation had been cleared." Mandujano resigned from the Fire

---

[1] It appears that this was after Mandujano's September conversation with the Fire Chief, although Mandujano does not provide an exact date for his September conversation with the Fire Chief.

No. 18-40561

Department on November 13, 2015. Several months after his resignation, the City Manager "represented that [Mandujano] was under investigation at the time of his separation of employment."

Mandujano brought suit against the City in Texas state court, alleging sex discrimination under Title VII of the Civil Rights Act of 1964. The City removed the case to federal court. Mandujano's proposed amended complaint alleges that the City constructively discharged him on the basis of his sex by investigating him for sexual harassment. The City filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Mandujano filed an opposition to the City's motion in which he requested, in the alternative, leave to amend his complaint, but he did not attach a proposed amended complaint to his opposition.

The district court granted the City's motion to dismiss and denied Mandujano's motion to amend. In considering the City's motion, the district court noted that the 12(b)(6) motion had been filed after the City had filed its answer. The district court therefore converted the City's motion into a motion for judgment on the pleadings under Rule 12(c), which is reviewed under the same standard as a 12(b)(6) motion. Under that standard, the district court concluded, Mandujano had failed to state a claim for sex discrimination. It accordingly dismissed the case with prejudice and denied Mandujano's request for leave to amend.

On the same day the district court signed its order dismissing Mandujano's complaint, but one day before the order had been docketed, Mandujano filed a supplemental response in opposition to the City's motion with a proposed amended complaint attached. Simultaneously, he also filed a stand-alone motion to amend with the same proposed amended complaint attached. The district court denied this motion to amend in a second order. Mandujano then filed a motion for a "[n]ew [t]rial and/or . . . to [a]lter or

No. 18-40561

[a]mend [j]udgment," which the district court also denied. The district court entered final judgment, and Mandujano now appeals.

## II.

Mandujano first argues that the district court erred in converting the City's 12(b)(6) motion into a 12(c) motion. Rule 12(c) provides that a motion for judgment on the pleadings may be made "[a]fter the pleadings are closed." According to Mandujano, the pleadings had not yet "closed" at the time the district court granted dismissal under 12(c) because he could have amended his pleadings as a matter of course at the time the City filed its 12(b)(6) motion. This argument misunderstands when pleadings are closed for purposes of 12(c). Rule 7(a) allows only the following as pleadings: a complaint, an answer, an answer to a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and, if ordered, a reply to an answer. Accordingly, for purposes of 12(c), "the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, crossclaim, or third-party claim is interposed." 5C Charles Alan Wright et al., Federal Practice and Procedure § 1367 (3d ed. Apr. 2019 Update). At the time the district court issued its order, a complaint and answer had been filed, and no other pleadings enumerated under Rule 7(a) were interposed. The district court's consideration of the motion was therefore timely.

Mandujano next contends that his initial complaint passed muster under 12(c). "The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). We review a district court's ruling on such a motion de novo. *Id.* at 598–99. To survive a 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570

(2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. *Id.*

Mandujano's sex-discrimination claim rests on a theory that the City's investigations into him created a hostile work environment and resulted in his constructive discharge. To state a claim of constructive discharge, a plaintiff must allege that working conditions became "so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004). Mandujano's initial complaint did not plausibly allege that this occurred. It should first be noted that Mandujano's initial complaint contained much fewer facts than the recitation of facts above, which we took largely from Mandujano's proposed amended complaint. The initial complaint alleged only that Mandujano "was a victim of sex discrimination," was "constructively discharged," was twice investigated "on the basis of his sex," and "could not continue his employment due to the intolerable and hostile work environment he endured from the complaints and investigations." Setting aside the obvious legal conclusions above, the complaint alleges only that Mandujano was investigated for sexual harassment. This falls far short of plausibly alleging constructive discharge. The district court therefore did not err in dismissing the complaint.

Mandujano next argues that the district court should have granted his request for leave to amend included at the end of his response to the City's motion to dismiss. We review the denial of leave to amend for an abuse of discretion. *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003). The district court did not abuse its discretion in denying the motion. As the district court explained, leave may be denied where, as here, the movant insisted his complaint sufficed to state a claim and "fail[ed] to apprise the district court of the facts that he would plead in an amended complaint, if necessary, to cure

any deficiencies." *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (quoting *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010)).

Mandujano finally argues that the district court erred in denying his independent motion for leave to amend, which did include an amended complaint, as well as his motion for a "[n]ew [t]rial and/or . . . to [a]lter or [a]mend [j]udgment." The district court denied the independent motion for leave to amend on the grounds that the action had been dismissed with prejudice and thus no action existed to prosecute. It alternatively found that Mandujano's motion failed the Rule 15(a) standard for leave to amend. We express no opinion on the district court's first ground for denial (that the case had already been dismissed). Instead, we conclude Mandujano's request for leave fails the Rule 15(a) standard. Once again, we review a district court's rulings on such motions for abuse of discretion. *Id.* at 291. "The district court properly exercises its discretion . . . when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility." *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014).

We conclude the district court did not abuse its discretion in denying this motion because the proposed amendment to Mandujano's complaint would be futile. Whether an amendment would be futile depends on whether the amended complaint states a claim on which relief can be granted, applying "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). Applying this standard, the amended complaint fails for the same reasons as the first. While the proposed amended complaint certainly provides greater detail to Mandujano's claims, Mandujano's new allegations nonetheless fail to bring his claim across the threshold for constructive discharge. Mandujano's proposed amended

complaint alleges that the Fire Chief told him that a finding would be made against him in the sexual-harassment investigation despite a lack of evidence and that he would soon be fired. However, he also alleges that the City Manager subsequently told him that he was cleared in the investigation. Accordingly, at the time he resigned, Mandujano had no basis to believe that the sexual-harassment investigation was still active or that he would soon be fired. These additional allegations therefore do not meaningfully aid Mandujano's constructive-discharge claim. Mandujano also alleges that Cortez made inappropriate remarks to him, but Cortez resigned long before Mandujano, so  her comments similarly could not have been the driving force behind his resignation. Accordingly, Mandujano's amended complaint fails to plausibly allege that working conditions had become "so intolerable that a reasonable person would feel compelled to resign." *Suders*, 542 U.S. at 147.

Mandujano's motion for a "[n]ew [t]rial and/or . . . to [a]lter or [a]mend [j]udgment" largely restates his arguments on appeal. Since we have already concluded those arguments fail on the merits, they a fortiori fail under the more deferential standard for motions to alter or amend judgment. *See Templet v. Hydrochem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (motion to alter or amend judgment "serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." (alteration in original) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)).

The judgment of the district court is therefore AFFIRMED.

7

No. 18-40561

JENNIFER WALKER ELROD, Circuit Judge, concurring in part and dissenting in part:

I concur with most of the majority's opinion. However, because I would hold that that Mandujano's proposed amended complaint pleaded an allegation of constructive discharge that was sufficient to survive a motion to dismiss, and that our original panel opinion therefore erred by affirming the district court's denial of leave to amend based on the grounds of futility, I respectfully dissent in part.

It is well-established that when we review the sufficiency of a complaint at the motion to dismiss stage, we are to draw all reasonable inferences in favor of the nonmoving party. *See, e.g., Morgan v. Swanson*, 659 F.3d 359, 401 (5th Cir. 2011) (en banc); *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005) ("The complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff.").

Mandujano's proposed amended complaint pleaded: (1) that he was subjected to unjustified sexual harassment investigations based on his sex; (2) that the fire chief told him a sexual harassment finding would be made against him even without any evidence; and (3) that the fire chief told him he would be fired soon. Accepting those allegations as true, which we must at this point, I believe Mandujano plausibly alleged that his working conditions had become "so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004).

The majority opinion states that Mandujano's proposed amended complaint is deficient because it also pleaded that the City Manager represented to Mandujano that the investigation had been "cleared" prior to his resignation, and that Mandujano therefore "had no basis to believe that the sexual-harassment investigation was still active or that he would soon be

fired." I think the majority opinion draws its inference in the wrong direction. Nothing in the proposed amended complaint asserts that Mandujano believed the City Manager's representation. In fact, the preceding clause of that sentence notes that Mandujano "never received anything in writing" about the investigation being closed. A reasonable inference to be drawn from that sentence of the pleading is that Mandujano was skeptical about the City Manager's representation, because he had already been told by the Fire Chief that the fix was in. Indeed, the majority opinion's contrary inference contradicts the thrust of the entire complaint, which alleges that Mandujano was being unfairly targeted with sexual harassment investigations that forced him to resign.

Accordingly, I disagree as to whether Mandujano's proposed amended complaint pleaded enough to bring his constructive discharge claim across the threshold at the motion to dismiss stage. *Cf. Faruki v. Parsons S.I.P., Inc.,* 123 F.3d 315, 319 (5th Cir. 1997) (noting that an "employee can prove constructive discharge by showing that [he] faced [a] choice between resigning or being fired" (citing *Burks v. Oklahoma Pub. Co.*, 81 F.3d 975, 978 (10th Cir. 1996)). I respectfully dissent in part.